UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: *SEE ATTACHMENT* | **PRETRIAL ORDER NO. 324: ORDER GRANTING IN PART AND DENYING IN PART MONSANTO'S MOTIONS TO EXCLUDE EXPERT KEVIN KNOPF AND FOR SUMMARY JUDGMENT** |
| | Re: Dkt. Nos. 18993, 19048 |

Monsanto's motions to exclude the specific causation opinions of Dr. Kevin Knopf are granted in part and denied in part. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior Daubert rulings in this MDL, and the arguments made by the parties. *See generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).[1]

Over two different motions, Monsanto moved to exclude Knopf in 23 individual cases. In each of the cases, Monsanto's only live arguments relate to Knopf's "ruling out" process. *See* Monsanto Replies (Dkt. Nos. 19533, 19538, 19539, 19540). Knopf has previously submitted very sloppy opinions in this MDL. *See* Pretrial Order No. 295 (Dkt. No. 19614) at 2. His work

---

[1] Monsanto filed a supplemental brief with additional testimony from Knopf depositions that occurred after the deadline for filing its motions. The plaintiffs' motion to strike that brief is denied.

on these cases is no different. For example, as Monsanto points out about Knopf's reports in *Coressel* and *Aldoupolis*, it seems obvious that Knopf used a "find-and-replace" function to swap one plaintiff's last name with another. *See* Reply (Dkt. No. 19538) at 3. That's not, on its own, inherently problematic. There are bound to be many similarities between reports in different cases, especially relating to general discussions of the literature and NHL risk factors. But when the copying of other reports bleeds over into plaintiff-specific information, it makes it impossible to know which sections of a report represent Knopf's analysis in that case, and which are the product of his lack of attention. In cases where that occurred, his opinion will be excluded.

     1. Knopf's opinion is excluded in *Doran* because he failed to consider the plaintiff's morbid obesity. In fact, his report stated that "obesity is NOT a risk factor for NHL," despite only citing a single study that seemed to address obesity and NHL. Knopf Report (*Doran*) (Dkt. No. 18993-8) at 10. Knopf walked that back during his deposition and admitted that he "can't rule out a link between obesity and NHL." Knopf Dep. (*Doran*) (Dkt. No. 18993-25) at 45:4–12. He even tried to belatedly address this error by filing a supplemental report after Monsanto filed its motion that purported to consider the plaintiff's obesity. Knopf's supplemental report is stricken, because it would not be fair (particularly in the context of this MDL) to allow plaintiffs to respond to *Daubert* motions by filing supplemental expert reports. Knopf's treatment of obesity precludes him from testifying in *Doran*.

     2. Knopf's opinion in *Aldoupolis* is excluded. The similarities between his report in *Aldoupolis* and *Coressel* have already been noted. It's impossible to tell which plaintiff the social history information applies to, or how Knopf considered the information. In addition, his casual dismissal of the plaintiff's brother's multiple myeloma lacks scientific rigor. He said in his report that "there is epidemiologic evidence linking a family history of NHL or myeloid leukemias with an increased risk for developing non-Hodgkin's lymphoma." Knopf Report (*Aldoupolis*) (Dkt. No. 18993-2) at 19–20. He nonetheless excluded it as a risk factor because "it may be that his multiple myeloma was caused by benzene exposure. Even if not, it would be considered probably a minor risk factor." *See* Knopf Dep. (*Aldoupolis*) (Dkt. No. 19429-3) at 76:9–14.

2

Monsanto gave Knopf a chance to explain his analysis in his deposition, and this was all he could offer. It is inadequate.

3. Knopf's testimony is also excluded in *Casale*. His deposition testimony showed he was unfamiliar with key studies about risk factors that he purported to rule out. *See* Knopf Dep. (*Casale*) at 79:11–81:19 (hair dye), 82:6–9 (alcohol). And he admitted that for at least one of those factors (hair dye), he would change his report to say it "may have been a potential risk factor to her development of lymphoma." *Id.* at 80:6–7. He offered no explanation for how he can nonetheless conclude that the plaintiff's exposure to Roundup is the more likely cause of her NHL.

4. Knopf's testimony is excluded in *Holliday* because he did not investigate whether the plaintiff's family history of non-hematological cancers or his type 2 diabetes were risk factors for his NHL. Regarding family history, Knopf testified that "the standard teaching for oncologists is not that a family history of a non-leukemia lymphoma is associated with an increased risk of lymphoma." Knopf Dep. (*Holliday*) (Dkt. No. 18993-26) at 26:8–12. But he admitted that he hadn't "had a chance to review those studies that well" that address a potential link between a family history of non-hematological cancers and NHL. *Id.* at 26:24–27:1. Knopf appeared confused about diabetes as a risk factor, testifying during deposition that he was looking at a study showing an association between type 2 diabetes and NHL, but also saying that the only reason he wrote that it was a risk factor in a report for a different case was that he was writing the report late at night. *See* Knopf. Dep. (*Holliday*) (Dkt. No. 19429-20) at 38:12–5. It's clear that Knopf did not adequately address either risk factor, rendering his opinion unreliable.

5. Knopf will be permitted to testify in *Putzrath*. His report is far from perfect, and Monsanto certainly has plenty of fodder for cross examination, but the issues it raises (age, race, gender, not determining whether the plaintiff was obese in adolescence, and his exposure calculations) are too minor to require his exclusion.

6. Knopf's handling of the plaintiff's morbid obesity in *Sorrell* requires his exclusion. Knopf admitted that a line from his report saying that a meta-analysis by Larsson showed no

statistically significant increase in risk of Orbital MALToma (the plaintiff's NHL subtype) with obesity was "probably a previous template and that's a typo." Knopf Dep. (*Sorrell*) (Dkt. No. 18993-29) at 32:5–24. The same is true for Knopf's report's mention of a study by Willet, which he admitted contained a typo, though it's hard to tell what that typo actually is. *See id.* at 35:25–4. His report said that Willet found no consistent effect of obesity on the risk of NHL, but did find an elevated risk of Orbital MALToma for people with morbid obesity. *See* Knopf Report (*Sorrell*) (Dkt. No. 18993-14) at 19. That seems to be the basis for his report's conclusion that Sorrell's morbid obesity put him at "moderate risk" for NHL. *Id.* at 33. After being confronted with his incorrect citations, Knopf somehow changed his opinion from Sorrel's morbid obesity being a "moderate" risk factor to a "minor" one. *See* Knopf Dep. (*Sorrell*) (Dkt. No. 18993-29) at 43:11–14. Knopf's poor quality report and changing opinions show his process was unreliable in *Sorrell*.

7. At first glance, Monsanto's arguments in *Stackhouse* seem strong. Ignoring or missing the kind of significant family history and Agent Orange exposure that the plaintiff reported during a doctor's appointment would probably require his conclusion. But even Monsanto admits that the plaintiff's explanation for why that medical record shouldn't be trusted is plausible: he was suffering from brain cancer at the time, not functioning well mentally, and may have invented his sisters' lymphomas and his Agent Orange exposure. *See* Opp (Dkt. No. 19429) at 18. No other evidence seems to corroborate the plaintiff's assertion, and some evidence seems to contradict it. *See* Stackhouse Dep. (Dkt. No. 19429-28) at 244:4–23. So while it's not a good look for Knopf that he didn't review the record before he formed his opinions, the fact that he missed it doesn't require his exclusion. His explanations for how he considered the plaintiff's post-NHL-diagnosis diabetes, age, ethnicity, and gender are also acceptable.

8. Knopf's testimony is excluded in *Williams*. As in *Holliday*, Knopf admitted at deposition that he did not conduct an adequate investigation into obvious potential risk factors, including a family history of non-hematological cancer, type 2 diabetes, and exposure to benzene and other chemicals, all of which applied to the plaintiff. *See* Knopf Dep. (*Williams*) (Dkt. No.

4

18993-31) at 146:24–147:4 (family history), 139:23–140:5 (diabetes), 158:13–20 (benzene).

9. Knopf is precluded from testifying in *Booth* because of inconsistencies in his opinions about the plaintiff's family history of cancer. In his report, he stated that "there are not felt to be significant associations with germline mutations" and NHL, so ruled out the plaintiff's three first-degree relatives with non-hematological cancer. Knopf Report (*Booth*) (Dkt. No. 18993-3) at 7. But at deposition, he seemed to change his mind, acknowledging that there was some evidence of an association and implying that he did not do a thorough job reviewing the literature relating to family history. *See* Knopf Dep. (*Booth*) (Dkt. No. 19438-4) at 29:1–14 ("I think in my current reports I do a better job of actually going through and summarizing some of the literature here because there's some positive studies and some negative studies."). When pressed for an explanation of how he assessed the plaintiff's family history, Knopf acknowledged that some studies show solid tumors are related to NHL but vaguely said that "was never part of my teaching along the way in oncology training or something that I hear oncologists talk much about." *Id.* at 38:9–21. That is not a reliable explanation.

10. Knopf's testimony is excluded in *Coressel* because of the copy-and-paste errors discussed at the beginning of this order and for how he handled the plaintiff's obesity. His report's discussion of obesity is a near-copy of that from his report in *Sorrell*, although it apparently doesn't have the same typos that report did. As in *Sorrell*, his report here indicated that the plaintiff's obesity was a "moderate risk factor" for NHL. *See* Knopf Report (*Coressel*) (Dkt. No. 18993-5) at 35. At deposition, Knopf seemed to not remember opining that Sorrell's obesity was a moderate risk factor and explained that he wasn't convinced that there was a biological mechanism for obesity to cause NHL, regardless of what the epidemiologic studies say. *See* Knopf Dep. (*Coressel*) (Dkt. No. 18993-22) at 48:5–22. But invoking the lack of a biological mechanism is not a talisman that can banish epidemiological evidence that an expert disagrees with.

11. Knopf's testimony is excluded in *Cryan*, where he gave unreliable explanations for how he ruled out the plaintiff's personal history of cancer. At deposition, Monsanto presented

5

evidence to Knopf that the McDuffie study "found nearly a 2.5-fold increase in the likelihood of developing NHL after experiencing a previous history of cancer." Knopf Dep. (*Cryan*) (Dkt. No. 19438-8) at 64:8–10. Knopf agreed that the study "found a statistically significant association in their analysis of a personal history of cancer being associated with NHL, but I'm not going to think that's a big risk factor." *Id.* at 64:11–15. Rather than raise specific criticism of the McDuffie study, Knopf made vague allusions to the literature, saying "it's not emerged that personal history of nonmalignant cancer has been a strongly associated risk factor with lymphoma." *Id.* at 18–22. This point seems to share some similarities with the point he made in *Coressel* about the lack of a biological mechanism—rather than explain why the conclusions Monsanto draws from the literature are wrong, Knopf employs generalities to disregard evidence he doesn't like. That is not science.

12. Monsanto has not presented evidence that any of the six other chemical agents the plaintiff in *Dominique* was exposed to are correlated with NHL. Therefore, Knopf will be allowed to testify in that case.

13. In *Rhuland* Monsanto contends Knopf did not give scientifically valid reasons to rule out the plaintiff's obesity or smoking history. In this case, unlike in some of the others addressed in this order, Knopf showed a little more fluency with the literature, pointing out that the data are strongest for an individual with morbid obesity, which does not apply to this plaintiff. *See* Knopf Dep. (*Rhuland*) (Dkt. No. 19438-12) at 29:25–30:5. With respect to smoking, Knopf noted that the plaintiff stopped smoking 16 years before his diagnosis, and analogized the relationship between NHL and smoking to lung cancer and smoking, noting that the risk of lung cancer drops off significantly 10 years after the individual stops smoking. *See id.* at 26:17–10. This seems questionable, because there has been plenty of testimony in this MDL that NHL can have a latency period of 20 years, which presumably makes it different from lung cancer. But Monsanto has not presented evidence showing that the analogy is so inapt as to be junk science. Accordingly, the motion is denied.

14. Knopf is excluded in *Rowland* due to how he handled the plaintiff's obesity. Knopf

6

admitted that there is an association between obesity and NHL and, in particular, between childhood obesity and NHL. *See* Knopf Dep. (*Rowland*) (Dkt. No. 19438-14) at 76:21–77:14. Unlike in *Putzrath*, where Monsanto argued for exclusion because Knopf failed to determine whether the plaintiff was obese in adolescence, here Knopf testified that the plaintiff was indeed obese in childhood. *See id.* at 76:14–20. He also wrote in his report that the plaintiff was obese at the time of his NHL diagnosis. *See* Knopf Report (*Rowland*) (Dkt. No. 18993-12) at 35. He gives no reliable explanation for how he could exclude this risk factor, so his testimony is excluded.

15. Knopf is excluded in *Setzer* because he failed to investigate the plaintiff's common variable immunodeficiency (CVID). Knopf admitted that CVID is a risk factor for NHL, and that he missed the plaintiff's CVID diagnosis when he drafted his report. *See* Knopf Dep. (*Setzer*) (Dkt. No. 19240-9) at 39:24–40:7. He even mentioned the possibility of drafting a supplemental report to address that risk factor, but it doesn't look like he did so.

16. Knopf's explanation for how he ruled out the plaintiff's exposure to other pesticides in *Wistinghausen* requires his exclusion. Knopf testified that "some of those pesticides are linked to NHL." Knopf Dep. (*Wistinghausen*) (Dkt. No. 19240-10) at 26:23–24. His explanation that "it may be that the GBH exposure was what tipped him over the edge to lymphoma genesis" does not reflect a reliable "ruling out" of the other exposures. *Id.* at 29:5–7.

17. Knopf is excluded in *Eilmes* because his explanation for how he ruled out the plaintiff's exposure to the pesticide 2,4-D is unreliable. He testified at deposition that "2,4-D has been in several of the studies I've reviewed as a potential causative agent for NHL," but that the plaintiff used substantially more Roundup than 2,4-D. Knopf Dep. (*Eilmes*) (Dkt. No. 19240-2) at 33:8–10; *id.* at 32:10–18. But he didn't know how much 2,4-D the plaintiff used, nor did he provide any basis to believe that exposure to 2,4-D would fall on the same dose-response curve as the alleged carcinogenic effects of glyphosate. *See id.* at 34:25–35:4.

18. The record Monsanto presents in *Gordon* fails to establish that Knopf should be excluded. Knopf's testimony that gender and race are not causative factors does not make his opinion unreliable, nor does the fact that his report misstates the plaintiff's race. *See* Knopf Dep.

7

(*Gordon*) (Dkt. No. 19240-3) at 94:22–95:9. Monsanto's surface-level questioning at deposition regarding Gordon's family history of cancer does not present enough of a record to exclude Knopf for that reason either. *See id.* at 94:6–17.

19. Monsanto's motion in *Haase* is denied for the same reasons.

20. Monsanto's motion is granted in *Hayden* because Knopf did not adequately explain how he ruled out the plaintiff's shingles. Unlike in *Stackhouse*, where the plaintiff showed that it was plausible that the record about other risk factors that Knopf missed was not accurate, the plaintiff's argument here seems to be more that it is acceptable for Knopf to have missed it, since it was just in one record. But Knopf testified that he thought he had read the record saying the plaintiff had a previous shingles infection and just didn't think it was a contributing factor. *See* Knopf Dep. (*Hayden*) (Dkt. No. 19240-5) at 26:7–20. Monsanto presented evidence that shingles infections are associated with NHL, which Knopf made no attempt to rule out, so his opinion is excluded. *See id.* at 28:7–31:25.

21. Monsanto's motion is denied in *Huntley*. Knopf's decision to credit the plaintiff's sworn deposition testimony and multiple of her medical records to conclude she had never smoked and thus rule it out is not inherently unreliable. On the issue of family history of cancer, Knopf demonstrated a stronger command of the literature than in some earlier depositions, and was somewhat better able to articulate why Roundup won out over family history. In addition, as mentioned in several other recent rulings, Monsanto's counsel conducted this deposition more like a cross-examination at trial, not giving the witness much of a chance to explain his answers. This is a close call, but the Court finds that Knopf's testimony nudges his opinion into the category of shaky-but-admissible. *See* Knopf Dep. (Dkt. No. 19048-9) at 15:17–24; Knopf Dep. (Dkt. No. 20410-2) at 20:19–22:11.

22. Monsanto's motion is denied in *Paula Pinheiro* for the reasons discussed in Pretrial Order No. 317. *See* Dkt. No. 20370.

23. Monsanto's motion is granted in *Eduino Pinheiro* because Knopf failed to reliably rule out the plaintiff's exposure to other glyphosate-based herbicides. Knopf's testimony on this

8

point is confusing. In one answer he testified both that the plaintiff "said he did not spray other herbicides," but also that he "may have used Gly Star or Farm Tek but not very much." *See* Knopf Dep. (*E. Pinheiro*) (Dkt. No. 19426-14) at 104:7–9. In another part of the testimony, he agreed that the plaintiff said he used both of those herbicides. *See id.* at 101:17–21. Knopf's only attempt to explain how he could rule out the plaintiff's exposure to other glyphosate-based herbicides was to say that he only bought those other herbicides once or twice a year. *See id.* at 104:1–4. He made no attempt to quantify the plaintiff's exposure, nor does it seem like he even investigated the plaintiff's use of those pesticides. Without that investigation, his opinion is unreliable.

\* \* \*

The Court will issue a ruling on Monsanto's motions for summary judgment with the rest of the Wave 7 cases. *See* Pretrial Order No. 314 (Dkt. No. 20341) at 3–4.

**IT IS SO ORDERED.**

Dated: March 31, 2025

_____
VINCE CHHABRIA
United States District Judge

**ATTACHMENT**

This document relates to:

| | |
|---|---|
| *Aldoupolis v. Monsanto Co.*, Case No. 3:20-cv-03433-VC | *Sorrell v. Monsanto Co.*, Case No. 3:22-cv-05287-VC |
| *Booth v. Monsanto Co.*, Case No. 3:20-cv-04654-VC | *Stackhouse v. Monsanto Co.*, Case No. 3:21-cv-02908-VC |
| *Casale v. Monsanto Co.*, Case No. 3:19-cv-05238-VC | *Williams v. Monsanto Co.*, Case No. 3:20-cv-04758-VC |
| *Coressel v. Monsanto Co.*, Case No. 3:20-cv-03720-VC | *Wistinghausen v. Monsanto Co.*, Case No. 3:20-cv-00027-VC |
| *Cryan v. Monsanto Co.*, Case No. 3:17-cv-05084-VC | *Eilmes v. Monsanto Co.*, Case No. 3:19-cv-05345-VC |
| *Dominique v. Monsanto Co.*, Case No. 3:21-cv-02705-VC | *Gordon v. Monsanto Co.*, Case No. 3:19-cv-06423-VC |
| *Doran v. Monsanto Co.*, Case No. 3:20-cv-02650-VC | *Haase v. Monsanto Co.*, Case No. 3:19-cv-05957-VC |
| *Holliday v. Monsanto Co.*, Case No. 3:19-cv-03014-VC | *Hayden v. Monsanto Co.*, Case No. 3:19-cv-05600-VC |
| *Putzrath v. Monsanto Co.*, Case No. 3:19-cv-03786-VC | *Huntley v. Monsanto Co.*, Case No. 3:19-cv-06407-VC |
| *Rhuland v. Monsanto Co.*, Case No. 3:19-cv-05598-VC | *Eduino Pinheiro v. Monsanto Co.*, Case No. 3:21-cv-00041-VC |
| *Rowland v. Monsanto Co.*, Case No. 3:19-cv-05310-VC | *Paula Pinheiro v. Monsanto Co.*, Case No. 3:20-cv-08173-VC |
| *Setzer v. Monsanto Co.*, Case No. 3:17-cv-03448-VC | |